UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHLEEN M. SIEWAK, et al.,

      Plaintiffs,

vs.                                                                    Case No: 8:06-CV-927-T-24EAJ

AMSOUTH BANK, et al.,

      Defendants.
_____/

## ORDER

Before the court are Plaintiffs' **Motion for Remand** (Dkt. 13) and Defendants' **Response in Opposition** (Dkt. 15). Also before the court are the exhibits filed in support of Defendants' response, including Defendant Ozzie Mancinelli's Request for Judicial Notice[1] (Dkt. 15, Attach. 2), the Declaration of Bryan Rho ("Rho Declaration") (Dkt. 15, Attach. 3), the Declaration of Scott A. McMillan ("McMillan Declaration") (Dkt. 15, Attachs. 4, 5, 6) and the Declaration of Jeffrey Eiring ("Eiring Declaration") (Dkt. 18). For the reasons set forth herein, Plaintiffs' motion to remand is denied.[2]

## I.    Background

In May 2004, Defendant Ozzie Mancinelli ("Mancinelli") obtained a judgment against Plaintiffs as individuals in a California state action in the amount of $ 962,029 (Dkt. 15 at 4, 5-6).

---

[1] The court declines to take judicial notice of the documents attached to Defendant Mancinelli's request for judicial notice (Dkt. 15, Attach. 2); however, the court will consider the documents as appropriate in terms of record submissions.

[2] The district judge has referred this matter to the undersigned for consideration and appropriate disposition (Dkt. 27). See 28 U.S.C. § 636(b)(1)(A); Local Rules 6.01(b) and 6.01(c), M.D. Fla. Accordingly, the undersigned enters this order as opposed to a report and recommendation. See also Johnson v. Wyeth, 313 F. Supp. 2d 1272 (N.D. Ala. 2004).

Mancinelli domesticated the judgment in Florida on June 21, 2004, attaching a judgment lien to Plaintiffs' property located at 1573 Coachmaker's Lane, Clearwater, Florida; the property was Plaintiffs' only asset capable of fulfilling the judgment. (Id. at 4, 6.) On July 16, 2004, Plaintiffs filed a complaint in Pinellas County Circuit Court seeking to stay the enforcement of the California judgment (Dkt. 9 at 2; Dkt. 15 at 6). Plaintiff Siewak ("Siewak"), who originally owned the entire interest in the named property, transferred the interest by quit claim deed to herself and Plaintiff Barlow ("Barlow") as joint tenants on July 19, 2004. (Dkt. 15 at 6). Mancinelli removed that action to this court on August 23, 2004; the district judge dismissed the action without prejudice on November 17, 2004 due to Plaintiffs' failure to post a bond as directed by the court (Dkt. 9 at 2; Dkt. 15 at 6-7). Subsequently, each Plaintiff designated their respective one-half interests in the property as homestead on February 3, 2005 (Dkt. 15 at 7).

On April 13, 2006, Plaintiffs brought this action in Pinellas County Circuit Court for declaration of homestead status under the Florida Declaratory Judgment Act, Chapter 86, Florida Statutes (Dkt. 2). On May 16, 2006, Defendants timely filed a notice of removal pursuant to 28 U.S.C. § 1441, alleging that this court has jurisdiction over the action pursuant to 28 U.S.C. § 1332 (Dkt. 1). On June 14, 2006, Plaintiffs filed the instant motion to remand, alleging that this court does not have jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy requirement is not met (Dkt. 13).

## II.     Standard of Review

28 U.S.C. § 1332 provides for federal subject matter jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000. 28 U.S.C. § 1332. If a federal court would possess original jurisdiction over the subject matter of a state court action,

a defendant may remove the action to federal court pursuant to 28 U.S.C. § 1441. Because the removal statute is construed narrowly by the removal court, "all uncertainties [regarding whether diversity jurisdiction exists] are resolved in favor of remand." Fichtenkort v. Catalyst Int'l, Inc., No. 8:05-CV-387-T-24EAJ, 2005 WL 1205521, *1 (M.D. Fla. May 20, 2005) (citations omitted).

## III. Discussion

Plaintiff argues that this court lacks subject matter jurisdiction to hear this case because her complaint only seeks declaratory relief and no damages (Dkt. 13). Defendants respond that the real object of the litigation is to avoid Mancinelli's enforcement of his judgment lien against property that Plaintiffs currently own in Pinellas County, Florida (Dkt. 15 at 8). The issue here is whether the requisite amount in controversy exists for this court to exercise jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.[3]

The court must first look at the complaint to determine the amount in controversy. Fichtenkort, 2005 WL 1205521, at *2 (citation omitted). Plaintiffs' complaint does not contain a demand for a dollar amount; however, the complaint does state that

> Plaintiffs pray that their real property herein described be decreed . . . homestead property and exempt from seizure and sale under any writ and otherwise that the lien of Mancinelli's judgment does not attach against the real property or, at a minimum, does not attach to the collective one acre (1/2 acre each to Barlow and Siewak) and that the judgment lien is not enforceable against the real property in that respect.

(Dkt. 2 at 2). While Plaintiffs do not demand a dollar amount, they do specifically request that the court declare the property exempt from the enforcement of Mancinelli's judgment lien.

"[W]here a plaintiff has made an unspecified demand for damages in state court, a removing

---

[3] Plaintiffs do not dispute that diversity of citizenship, as required by 28 U.S.C. § 1332, is satisfied.

3

defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement." <u>Fichtentort</u>, 2005 WL 1205521, at *2 (citations and quotations omitted). Defendants offer several arguments in support of their contention that the amount in controversy has been met. First, Defendants argue that the amount in controversy exceeds $75,000 because the property that forms the basis for the complaint is valued at approximately $1.2 million and Mancinelli's lien in the amount of $962,029 appears to be collectible based on the property value (Dkt. 15 at 4). Defendants assert that the monetary value that would flow to Plaintiffs should they be successful in their suit is the amount of the judgment lien they would avoid, $962,029. Second, Defendants argue that Siewak designated the property as commercial property on her 2001 IRS Form 1040, thus potentially estopping Siewak from designating the property as qualifying under Florida's homestead exemption. (<u>Id.</u> at 8). Next, Defendants argue that the entire property is too large to be homestead property under the parameters set forth in the Florida Constitution; thus, parts of the property not qualifying as homestead may be attachable. (<u>Id.</u> at 9). Finally, Defendants argue that even assuming that the property was encumbered by the starting value of all of the mortgages Plaintiffs have held on the property, the approximate net value of the property would still exceed the $75,000 amount in controversy requirement. (<u>Id.</u> at 11).

"[I]t is well established that the amount in controversy is measured by the value of the object of the litigation" in actions seeking only declaratory or injunctive relief.  <u>Ericsson GE Mobile Commc'ns v. Motorola Commc'ns & Elecs., Inc.</u>, 120 F.3d 216, 218 (11th Cir.), <u>reh'g and sugg. for reh'g en banc denied</u>, 130 F.3d 446 (11th Cir. 1997) (citations and quotations omitted). The Eleventh Circuit has expressly adopted the "plaintiff-viewpoint rule," which requires the court to measure the

4

object of the litigation solely from the plaintiff's perspective. Id. at 219. Therefore, where a plaintiff claims injunctive or declaratory relief, the value of that relief for the purposes of satisfying the amount in controversy requirement "is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." Leonard v. Enterprise Rent A Car, 279 F.3d 967, 973 (11th Cir. 2002) (citation omitted). The court should remand the case for lack of subject matter jurisdiction if the value of the declaratory relief is "not sufficiently measurable and certain to satisfy the $75,000 amount in controversy requirement." Fichtentort, 2005 WL 1205521, at *2 (citation omitted).

Plaintiffs allege that the value of the declaratory relief is too speculative and immeasurable to satisfy the amount in controversy requirement because there is a substantial mortgage encumbering the property in favor of Defendant AmSouth Bank and there are significant surveying issues regarding the claims of each Plaintiff to different one-half acre portions of the property (Dkt. 13 at 2). Plaintiffs also argue that Defendant's notice of removal contains only conclusory assertions that are insufficient to establish subject matter jurisdiction. (Id.)  Furthermore, Plaintiffs assert that Defendants must establish by a preponderance of the evidence that the value of the homestead exemption to each of the Plaintiffs was at least $75,000 as of the date of filing the notice of removal. (Id. at 4).

A notice of removal must set forth the underlying facts supporting an assertion that the jurisdictional amount is satisfied; conclusory allegations are insufficient. See Williams v. Best Buy Co., 269 F.3d 1316, 1319-20 (11th Cir. 2001). In their notice of removal, Defendants alleged that "complete diversity exists between the parties in accordance with 28 U.S.C. § 1332(a)(1), and the amount in controversy exceeds $75,000 as to each party" (Dkt. 1). Defendants also set forth that

Mancinelli domesticated a judgment in Pinellas County, Florida against Plaintiffs in the amount of $962,029 and that the value of the real property jointly owned by Plaintiffs exceeds $75,000. (Id. at 4). However, neither Defendants' allegations nor its supporting documents to the notice of removal set forth the underlying facts to support the assertion that the amount in controversy exceeds $75,000; Defendants' allegations in the notice of removal are therefore conclusory.

However, while "the jurisdictional facts supporting removal must be assessed at the time of removal," the court is not limited to examining just the complaint and the removal notice where these documents are inadequate to determine whether the amount in controversy exceeds the jurisdictional requirement; the court may consider post-removal evidence when necessary, which includes "review[ing] the record to find evidence that diversity jurisdiction exists." Cowan v. Outpatient Partners, Inc., No. 6:04-CV-28-ORL-22JGG, 2004 WL 1084160, *7 (M.D. Fla. Mar. 31, 2004) (citations and quotations omitted). If a plaintiff does not claim a specific amount of damages, a removing defendant must "only show that the amount in controversy will 'more likely than not' be satisfied." Logsdon v. Duron, No. 3:05-CV-243-J-16HTS, 2005 WL 1163095, *3 (M.D. Fla. May 17, 2005) (citations omitted).

Defendants have submitted substantial evidence establishing that the amount in controversy requirement is met here.  The Eiring Declaration sets forth that Jeffrey Eiring, a Florida state licensed and certified real estate appraiser who represents Bay Port Appraisal Services, Inc. based out of Tampa, Florida, was hired by Mancinelli's counsel to perform an appraisal of the property at issue. (Dkt. 18, Eiring Decl. at ¶¶ 1-5). Eiring, whose appraisal report of the subject property is attached to his declaration, appraised the property as having a value of $1,173,300 as of June 29, 2006. (Id. at ¶ 6). Additionally, the McMillan Declaration included a June 29, 2006 printout of the

6

property record card for the subject property obtained from the Pinellas County Property Appraiser Office's ("PCPAO") website (Dkt. 15, Attach. 4, McMillan Decl. at 9-11). On June 29, 2006, the PCPAO listed a comparable sales value for the subject property as $867,500 as of January 1, 2005. (Id. at 10). However, the PCPAO also cautions that their system of mass appraisal market value "tends toward the lower end of the range. . . . our values are historical and are developed using arms length sales from the three years prior to January 1. . . . [f]or this reason, our values are generally lower than what a seller will ask for a property in today's appreciating market." (Id. at 9). Therefore, as of June 29, 2006, the court finds that the subject property's value was at least in the range of $867,500 to $1,173,300.

Mancinelli's counsel used TitleProfile.com and Rod Huerto of Southland Title Company in San Diego, California, to perform a title search on the subject property ("the Title Report"). (Id. at 2-3). Counsel also searched the Pinellas County Public Records website for recorded mortgages on the subject property. (Id.) The Title Report and copies of previously recorded mortgages on the property are attached as exhibits to the McMillan Declaration.

The Pinellas County Public Records revealed two recorded mortgages on the subject property in favor of Defendant AmSouth Bank: one in the amount of $71,000 executed by Plaintiff Siewak on May 23, 2001(Id. at 33-39), and one in the amount of $568,000 executed by Plaintiff Siewak on May 23, 2001 (Dkt. 15, Attach. 5). The Title Report shows the $71,000 mortgage on the property in favor of Defendant AmSouth Bank (Dkt. 15, Attach. 4 at 19-20). The Title Report does not, however, show any mortgages on the property in addition to the $71,000 mortgage. (Id.) Therefore, it appears that the $568,000 mortgage on the subject property has been paid off.

Attached to Plaintiffs' complaint is another mortgage note in the amount of $90,000 executed

7

by Plaintiffs Siewak and Barlow in favor of Defendant AmSouth Bank on January 13, 2006 (Dkt. 2, Ex. B). Based on the record, it is unclear as to whether Defendant AmSouth Bank has recorded this mortgage against the subject property in the Pinellas County Public Records. Even assuming that the January 2006 mortgage is a properly recorded mortgage, it would appear from the record before the court that the property is encumbered, at most, by mortgages in the amount of $161,000. Given that the property is valued somewhere in the range of $867,500 to $1,173,300, the value of the subject property less the validly executed mortgages easily exceeds the amount in controversy requirement.[4] Thus, the question before the court is whether the "object of the litigation" in this case is Plaintiffs' avoidance of a forced sale of the subject property to satisfy a judgment lien or merely a request for declaratory judgment as to the status of the subject property.

Based on the record evidence before it, the court finds that the object of the litigation is avoidance of a forced sale of the property to satisfy a judgment lien. As set forth in Plaintiffs' complaint, their objective in seeking declaratory relief is not to just obtain a declaration of homestead status on the property, but to obtain a declaration by the court that Mancinelli's judgment

---

[4] As Defendants suggest, even if the property were encumbered by the total of the starting value of all mortgages ($729,000), the approximate net value of the property when offset against the lowest estimated value of the property ($864,500), is $138,500, which also exceeds the amount in controversy requirement. Plaintiffs' argument that the amount in controversy requirement would have to be satisfied as to each Plaintiff is without merit; claims can be aggregated to meet the amount in controversy requirement where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Darden v. Ford Consumer Finance Co., 200 F.3d 753, 756 (11th Cir.), reh'g and sugg. for reh'g en banc denied, 211 F.3d 596 (11th Cir. 2000) (citation and quotations omitted). Here, Plaintiffs' holding of the property as joint tenants gives each Plaintiff a common and undivided right to the entire value of the claim. See Glover v. Midland Mortgage Co. of Okla., Inc., 228 B.R. 293, 311-12 (N.D. Ala. 1998) (explaining in that the case of joint tenants moving for an injunction, the claim would be precisely the same value regardless of who or how may joint tenants brought it, due to the nature of joint tenants holding a common and undivided interest in property).

lien is not enforceable against the subject property (Dkt. 2 at 2). When viewing the value of this declaratory relief from Plaintiffs' viewpoint, the court concludes that the benefit that would flow to Plaintiffs would be the avoidance of a judgment lien in the amount of $962,029 against property that Plaintiffs own. Whether Defendants will be successful in collecting the full amount of this judgment lien remains to be seen; however, based on the evidence before the court as to the subject property's market value as of the time of removal and the evidence as to the outstanding encumbrances on the property, or lack thereof, the court concludes that should Plaintiffs succeed in obtaining homestead status on the subject property, thereby preventing Mancinelli from collecting on his judgment lien, a benefit clearly in excess of the $75,000 jurisdictional requirement would flow to Plaintiffs.

## IV.   Conclusion

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED**:

(1)   Plaintiff's **Motion to Remand** (Dkt. 13) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida this 22nd day of November, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge

9

Copies to:
District Judge
Counsel of Record